Next case is In Re Marriage of Nolen, 5-18-0435 May it please the Court, Madam Counsel. My name is Ed Minton and I represent William Nolen, the appellant. Short background, the parties were married in 1992. There were four children born to the parties. There is one that is still a minor. There was a, the appellee filed a petition for dissolution in 2016. Mr. Nolen filed a counterpetition in 2016. There is an order for parenting time for Mr. Nolen that was entered in August 3, 2016. In June of 2018, I filed a petition to enforce the parenting time. Subsequently, Ms. Crawford filed a petition to suspend the parenting time. And the court in August of 2018 entered an order that indefinitely suspended the parenting time. On appeal, I have three issues. The first was the trial judge's perspective on these type of cases. Before hearing any evidence, he stated that he would not in any situation enforce parenting times against the wishes of the child. And he also referred to a previous case, it was in a point of appeal, where he did the same thing. And basically he said, I'm not forcing him to go unless the appellate court tells me. That's a direct quote. And as I read the law, that's not the law. That's not what the law is. The case law is pretty clear. The statute is pretty clear. Parenting time is in the best interest of the children. Both parents should cooperate. And for whatever reason, he doesn't want to get involved in that type of situation. And it's not going to enforce. Because he says, I don't know the answer to that question. Do you guys ever deal with that? Well, what's the court supposed to do? And at that point, before we had any evidence, I knew I'd probably be up on appeal. And so we heard the evidence. And I found the May case relating to the 2018 case relating to the new statute. So in that case, they followed the serious endangerment standard for the new statute. So all that, the case law that preceded that applies also to this case. So in order to restrict parenting time, you have to find a serious endangerment to the child. So procedurally, I went first at the trial court because I'd filed my petition first. I called Ms. Nolan as an adverse witness. I wanted to find out what's the serious endangerment. She testified there's no serious endangerment here. Well, isn't there, I presume that there's a distinction that they're making between emotional versus physical, right? Yeah, I haven't found any cases that deal with that. The only case I had was the May case. And that was dealing with the emotional, the significant emotional issue. But in that case, they followed the standard, serious endangerment standard, in that case for that finding. So they didn't make a distinction in that case between the two. I would say the burden is the same. You would have something extreme out of the ordinary that would require the court to intervene and restrict the parenting time. So in that sense, yeah, the wording is different, but I don't think the standard is different. So I was kind of alarmed by the lack of direction and structure that everybody was left with in this case. I guess we'll say that. But I want to go a little bit, I guess, kind of to her as the record. But I think there was on the docket entry there was going to be a status conference in October. Yes. And it didn't state what that pertained to because the parties were still married. And so I don't know if there's been any further resolution. No, there hasn't. Okay. So it's still suspended. It's still suspended, yeah. That's not in dispute. That's not, well, yeah, it's still suspended. He hasn't had any parenting time since last June. And what concerned me, too, was when the judge did his in-candidate review with the child, he told the child, this is a quote here, too, it says, the law doesn't agree with this, but I just take the position that once a person is 16, there's not a whole lot that anybody can do, you know, to make you do much. So I'm concerned that we're going to continue to have this problem with the judge because the child doesn't want to participate in parenting time. He's not going to enforce it. So actually I guess he would have been better off just left the order alone because it turned out worse for him in the sense that I guess he can't initiate or there can't be any visitation between them. Well, I mean, we're in the same situation because in June they just stopped having any sending her over. That's what I'm saying. I mean, could she even go over if she wanted to? I don't know that she could. Well, not by court order. There's no enforcement of that right now. I mean, as it stands now, he doesn't have any parenting time. So as far as the serious endangerment, the mother testified there was no serious endangerment. The child testified this is what the problem was. She didn't want to be compelled to do it. She's a 14-year-old. She was 13 at the time. What she wants to do is what she wants to do. And I think that the parties have tried to accommodate that. I think the record shows that. Testimony from the grandmother that they know when she's going to be available, when they have to go get her, what's going to be. And they wake up that morning and say, you know, has she called? You know, what's her plans? What are we supposed to be doing? And that that is the way that it's been handled. That shouldn't be the way it's handled. In my opinion, I think if you've got a court order for parenting time, unless there's an emergency, everybody should be on board and that child should be where the child should be at that parenting time. And I think what happened, I think it come to a head, that one, and there was some misunderstanding according to the testimony. The mother even said that her testimony, the child should have made it more clear. But the father wanted to take the child to the softball game on his parenting time. And the child left the impression was that the mother was going to take her. And that was the dispute. And then after that, the child doesn't want to go. But the main problem all along, though, was that, yeah, she wanted to go when she wanted to go and wanted to leave when she wanted to leave. And and she didn't want to to be restrained to a set time. And the judge, as your master in the kingdom, if I allow you to pick the times, OK, she said, I don't think I'd like that either because I'd be obligated to comply with it. So I mean, there's so this has to do with the child and not necessarily the father. This is the case, the case like the terrorist case that we cited here in the where you have a problem. The child, you know, going to visitation. So what do you do? And that's what the trial judge was saying. You know, what do I do in that situation? Well, it is a difficult situation. I don't think anybody can. I sympathize with the child, but, you know, just as the terrorist case that, you know, the mother can't get out of her obligation to comply with it just because, you know, the child doesn't want to. Even more so, the court can't get out of court. I was going to say, what are you what would you contend has been the mother not complying? Well, I mean, in her testimony, she said, you know, what am I supposed to do to take the child out kicking and screaming? I think that was a direct quote. So she she has not been involved. Plus, the court asked and said to the child, you know, is that part of the problem you having to deal directly with the father? Why don't I set it up where the mother deals with the father? She didn't want that. She didn't want that. I'll deal directly with my father. I don't want my mother involved with it. So to the extent of whether she's encouraging it, discouraging it, I don't know. I mean, but it would seem to me that she could intervene a lot more and encourage the parenting time if she wanted to. And the third issue, I mean, I don't think that there should have been a restriction, but I mean, the list of restrictions that the court had to choose from, he chose the most drastic. I mean, he just went all out. You're done. And that's consistent with how he behaved in the other case. He said, you know, the kids don't want to see their father. It's consistent with what? The previous case that was on appeal where he said. Oh, OK. He referenced that. He referenced that. He said the same thing. You know, I'm not going to force the kids, which may mean that they never see the father again. And so, I mean, that's why I'm here, Your Honors. So what are you asking for? I'm asking for the court to reverse the finding that there's a serious endangerment to the child, to remand the case. What was the basis for the court's finding that it was a serious endangerment? Well, his wording was, it says, the court has considered all the evidence and arguments of counsel and is otherwise fully advised on the premises. Wherefore, the court finds that the petitioner has proven by a preponderance of the evidence that the respondent's behavior significantly impaired the child's emotional development. Accordingly, the court gave temporarily suspends respondent's parenting time. What behavior was the court referring to? I don't know. Well, we do know there was some texting that went on. That's right. You know, he made some remarks about, you know, if you don't want to show up, why don't you just stay with mom? You chose her and hurt her feelings and that type of thing. I mean, I'm sure that that's all that's in the record. That's in the record. I think that we put down in our petition, you know, almost what we remembered verbatim. I think that Ms. Nolan said, yeah, that that's substantially what it was. But it boiled down to he had an expectation, which I don't think is unreasonable, but, you know, during his parenting times, he should have his parenting times. So he did it a lot more than him being a little bit terse. He got upset, and I think there was a little self-care involved. And that was the extent of the serious endangerment. That's it, you know. And, you know, as far as going back, you know, sending it back, I think that we need to make up this parenting time that he's lost. And also, I mean, the court's asking. I think the court is asking for direction on how to handle these type of situations. I mean, he's asked for it, I mean, in the transcript, for the appellate court to order him to do what he needs to do. Well, there's nothing in the record that suggests that the mom is, you know, that she plays a role in forwarding the visitation. I didn't read anything in the record that would give anyone that impression. So I do, you know, appreciate that it's difficult, but I just kind of am shaking my head at how the judge handled it, which basically means that he may never get visitation with her until she's an adult. He chooses to do so. I mean, the whole purpose is to foster healthy relationships with the noncustodial parent, and I don't think you do that. Even parents that may pose some physical concern, they have supervised visitation and that type of thing. So this seems rather extreme. I think the judge could order the mother to become more active in encouraging the child. So to be clear, though, there was no allegation by the father that the mother was poisoning the child's mind toward him? No allegations of that nature. Well, I mean, they've not. I mean, they've had no contact with each other for. They had no contact. Yeah, it doesn't matter if the father don't speak to each other. All the communication went through the child. So what the child says to the father, you don't know if that's what the mother's saying, and vice versa. Thank you, guys, for your time. I hope you don't feel like you're under attack by me. No, of course not. I've never seen a case like this in my almost 12 years on the court. And I hope to address a lot of your concerns. And I know there was some past history, but that's not really part of this. Okay. So may it please the Court? Sure. Counsel, my name is Lana Crawford, land of Lincoln Legal Aid. The trial court's finding that the father's behavior significantly impaired the child's emotional development was not against the manifest way to the evidence. This case, the case was both parties were asked to modify. Nobody was being asked to be held in contempt. And in modifying the order, in deciding whether to modify, the judge had a full evidentiary hearing with testimony. Both mother and father testified. There was testimony presented about domestic violence in the past, father's manipulative behavior in the past, and statements he made to the child. And those effects those statements had on the child's emotional health. The court then decided as to respond to talk to this child in camera. And then in that interview, he properly inquired as to the father's conduct with the child and that effect of that conduct that had on that child's emotional health. He also properly inquired as to that child's wishes for parenting time. Then after that, he still didn't make a decision. He asked counsel to brief the issues. And we were to file written briefs, briefing what we thought we had proven and what he could do. It was only after hearing all of this evidence that the trial court found that father's behavior significantly impaired the child's emotional development. What behavior? So the behavior is, you have to look at these text messages I know counsel mentioned and the totality of the life this child had. There was significant domestic violence in the past. Between father and mother. Between father and mother that daughter witnessed and was part of. However, in his July 11th order, he says that there was no concern for physical harm and the order stays in effect. The only thing that happened after that was he had to be on camera with the daughter. And she doesn't reference anything about the domestic violence that occurred. And basically she sounded like a very precocious, precocious, smart little girl I thought. But she was just a typical, typical 14-year-old. I want to be with my friends. You know, basically it's a drag. Yeah, that I'd have to go see him when I don't want to see him. And, you know, it was obvious that she was pretty much, she was running the whole show. And now, granted, he sent some texts that were, you know, not stellar parenting. You know, like kind of self-pitying, I guess. You chose who you loved. Yeah, but it was obvious to me in her conversations with the judge that she very much loved her dad and she just wanted to see him on her own terms, which is not the law. And he's left with no structure, no direction. We have no idea where this is going to end up. Well, I don't think he's left with no direction. So the court found that recommended counseling, that fathers seek counseling and try to initiate participating counseling with daughter. The daughter? Daughter already is in counseling. Yes, and she said, I don't think I want to go to counseling with my father. But also, that wasn't even in the order. He said, well, I might suggest you try some counseling. That was kind of an off-the-cuff statement that he made to the father. Well, I think it's in doing a reflection to the life this child had. So I understand that child sort of wanted it her way. But we have to look at why, okay? This isn't just because she just wanted to. Mother testified, I mean, one of these domestic violence incidents, father held her down, held her like this, and would not let her leave the house. The 16-year-old at that time called the police, called 911, and when 911 came, they let her leave. Then you have two years worth of parenting time where, as Your Honors have noticed, mother here, there's no allegations here that mother's standing in the way. I agree. Okay? Mom continues to testify that she continuously encouraged the daughter. I mean, they have three older daughters together. She continually encouraged her daughter to talk to your dad more, be more open with him, go. There's no testimony that says mom was in any way poisoning her. Was there any testimony with regard to the relationship between father and the older daughters? I mean, did they still have a relationship? There's none of that on the record. Okay. So then mom testified also that daughter's behavior, what she could see how daughter was acting prior to these parenting times, was anxious and worried. And she'd get nervous because she didn't know what kind of mood dad would be in and whether dad would react about something or whether dad would be upset. You're seeing one incident of text messages. This happened for two years. Mother testified that these kind of incidences happened all the time. Daughter testified that this was just the way her dad was and that had been building through the last two years and that she had hit her breaking point. Daughter also testified in camera that she wasn't entirely comfortable talking about her issues with her dad in front of people. She testified that she wanted a break. She didn't say she didn't ever want to see dad again. And while the suspension is temporary, he's set for a status in 35 days. So we're going to be right in front of the court. There was nothing stopping dad from – this doesn't stop contact by phone or any other oral contact. Dad's father could have tried to do counseling, tried to do counseling with daughter. And I understand daughter said, I don't think that will help, but that just goes further to show that the judge wasn't just listening to this 14-year-old daughter, that child, he was looking at, this is an internal personal relationship between dad and father. Father's behavior has significantly impaired her emotional development to the point she's having blow-ups at school about her relationship with her father. And that something is – This is the same girl that doesn't want to talk to people about her father's relationship. This is the same – absolutely. This is the same child who is nervous because she said she didn't want to talk because there was people in the room. So that is sufficient evidence coupled with the context of this child has seen domestic violence in the past and has seen his anger and has seen where it can lead is sufficient and the court's finding that that behavior was significantly impaired this child's emotional development was not against the manifest weight of the evidence. And then so after you take in all of that, you go to whether or not it was not against the manifest weight of the evidence and then whether restriction was appropriate. I think that while it's not very – you're absolutely correct, the order's not very detailed, it does give father actions he can take. And it does reset it for 35 days only. This is a pending case. But wait a second, you're saying reset it for 35 days. It's been since June. Well, that's because father filed the appeal, Your Honor, which stopped – put everything on hold at the circuit level. So nothing's happened at the circuit level during the pendency of this appeal because father filed the appeal. He could have came in at day 35 and said, you know, we tried, we had these visits, or we talked, or I tried to go here, I tried to go there, and shown the court what the steps he was taking to remedy this very difficult situation. I'm confused. I thought it was suspended. You're saying he could have – I'm saying the court order was – the parenting time was temporarily suspended. Yes. But I'm not sure that there's anything that would have prohibited contact. I mean, it wasn't a no-contact order. There wasn't an order of protection. Well, if visitation is suspended, it's suspended. I take that as there's no visitation allowed. The court order says that it was – the court order was suspended, temporarily suspended. And I think that there was testimony that mom gave or that mother gave that said that she was very willing to try to foster a relationship with her daughter, but that given what her daughter experiences and given what she sees from her daughter during these parenting times and what her daughter reports, and then now daughter's 14 and refusing to go completely, that she was sort of, what more can she do? And I think that it's father's – I mean, father fails to take any responsibility for anything that he's said or done to his 14-year-old daughter. You know, I'm not saying anybody's getting the parent of the year award here, but I've seen predators and child molesters that end up getting some kind of visitation. And I just found this striking that it was just like indefinite, no visitation. Well, and I don't think it's indefinite. It is indefinite because, well, we're at six months already. And that's only because he filed an appeal, Your Honor. Well, you also, though, keep referring back to this, he could have went 35 days. He could have went in front of the judge who stated, I'm not going to order anybody to do the visitation if the kid doesn't want to. So what did he have to lose by filing the appeal before that 35 days? Well, I think it's the remedying of the core issue. I mean, I think that the judge in this case had sufficient evidence to find that dad's father's behavior significantly impaired this child's emotional development. Now, counsel wants to say that it's the same. But it's not in his order, though, is it? I mean, it's not very specific as to what his reasoning is that he finds that this person is seriously endangered. But he heard all the evidence. And he heard a half-day testimony, didn't change it. He did an in-camera interview with the child, said that's not enough. And then he asked us to brief the issues. So it's not like just from the get-go he didn't hear anything and he said, you know, I'm going to do this. Like, he took all of these steps to make sure he could get as much information as possible and then fashioned a remedy that reflected that. And I think that the fact that this is an ongoing divorce case that still has to be heard at final hearing. I mean, all issues are still pending. That was another chance for dad to, again, adjust these concerns. Because there are legitimate concerns about dad's behavior with this minor child. How can he adjust his issues with respect to building a relationship when he has no way to see her or be with her? Well, I think the attending counseling was a suggestion that the court gave father of ways he could address. That would be one thing if the court said, I'm directing you to, you know, go to counseling if you want to see her. And he didn't. But, I mean, his just saying, well, you might go to counseling, doesn't hold any water, I don't think. And I think that he, I think that the judge could have absolutely said, you have to go to counseling. I think the judge just wanted dad, the father, to acknowledge that his behavior is damaging his daughter. Well, actually, I think he did. I think he did on the stand say that I've said things that I wish I regret that I did. But he keeps saying them. Well, he hasn't seen her in six months. I mean, it's not on the record, but that's not, he has seen the daughter. It is not on our record at appeals, so I want to be really careful of talking about it. But there is contact. So, and I think that the fact that the short status date when we were all going to be in front of the judge would have given him the opportunity to ask for more, and we all would have been able to tell the court, this is what's happened in the last 35 days. And certain things happened in those last 35 days that we would have been able to tell the court to be able to gauge where, you know, the relationship was. I think that counsel also wants to talk about the new significant impairment of the child's emotional development in the statute. That was added after the overhaul of the INDMA. That's new. So the legislature, by adding that, understood that in broadening the court's power to limit a parent's time with the child if there's been a significant impairment of the child's emotional development. That is not the same as a severe endangerment of their physical health. And in May's counsel reference, the court found that a father's inability to control his anger and to appropriately respond to heated situations was sufficient to equal or to warrant a restriction of parenting time. And just to back up just for a second, when you suggest that, you know, the amendments to the act allow for, you know, to take more direct action to prevent serious endangerment of emotional harm to the child. The only thing we have in the order, though, is that there is a, to suggest that serious endangerment is the text messages. Because apparently the order also says there's no concern for physical or issues with the parent being with the child. So the only thing that, you know, he alludes to, no matter, you know, regardless if there's a ton more emotional stuff going on, the only thing he suggests in the order is a couple of text messages that are cursed at most. Well, the order is just a docket entry. So I think we have to go by the... I'll read the whole record, though. You have to read the whole... I've read the whole record. But I think that it's more than just the text messages in that record. Oh, I know. I know. I mean, it's a whole history of two years of this child going and getting upset and her starting counseling and blowing up at school. Well, go ahead and finish.  Yeah, go ahead and finish. I'm going to have one more question, too. And I just want to say that all of that supports the finding that father's behavior significantly impaired the child's emotional development and it should be upheld. And father's suspension of parenting time was not an abuse of discretion and should also be upheld. Okay, so then that leads me to my last question for you, and you're getting a little extra time. The abuse of discretion is our standard here, correct? Correct. And so... It's your standard as to... It's a manifest weight standard as to whether or not father's behavior significantly impaired the child's emotional development. And then it's an abuse of discretion standard with whether or not the temporary restriction was necessary to protect the child. Okay. That's all I have. That's all I have. Thank you. All right. Thank you. You have five minutes. The trust board did hear all of the allegations that Ms. Crawford put forward, and then at the conclusion of hearing all of that, he said, frankly, I haven't heard any reason to be concerned about her personal safety or physical safety when she's with her dad, so whatever there is is simply an interpersonal relationship. Perhaps the fact that parents are going to start communicating about the child's schedule will alleviate some of the anxiety that Samantha apparently is having about all of that. And then he goes on as far as his order. He doesn't do any restrictions. In fact, he even goes and changes the order that we thought was just going to be temporary back in August of 2016 to have his parents, the child's grandparents, to do the transportation. He changed that. We don't do that. The parents are going to do the transportation and meet together. But that wasn't even in the order, was it? That's not in the order. Well, in the order of July the 19th, 2018, there was a written order that was entered. That was after the initial testimony of the father and the mother and the grandmother and the grandfather. And so he made that, and that's when he made the statement that he said that he didn't have any concern about the child's safety. So that was a written order that was a follow-up to the docket entry? No, that came before the docket entry. Oh, okay. So, yeah, this was on July the 19th, 2018. There was a written order. That was after the conclusion of the testimony of all the parties. But then after he had the in-camera review of the child, he made the docket entry. Okay, so, but also he changed the 2016 order in the July 2018 to allow the mother and father to communicate again regarding the child. So, I mean, there was no, I mean, this domestic dispute issue, you know, that may have gone on in 2015 and 2016, was not a concern to the court in July of 2018. So, I mean, that could not be a basis upon which he could make his decision if there was a substantial endangerment to the child. Thank you, Your Honor. Thank you. We will take the matter under advisement and we will issue a ruling in due course. And, again, I'm not sure if I reminded everyone before we started this process, but Justice Cates is also on this panel and is participating. She couldn't be here today, but she will be participating in the order. All right, thank you. Court is adjourned in recess. Until next month.